AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br>Christopher Tate -01<br>Jovan Stewart -02<br>Tia Dimmett - 03<br><br>*Defendant(s)* | )<br>)<br>)   Case No. 1:20-mj-174<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __February 21, 2020__ in the county of __Marion__ in the _____ District of _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew W. Holbrook, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __02/24/2020__

_____
*Judge's signature*

City and state: __Indianapolis, Indiana__   Tim A. Baker, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Matthew W. Holbrook, Special Agent, with the United States Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

### Affiant Background and Purpose of Affidavit

1. Your Affiant is a Special Agent (SA) of the federal Drug Enforcement Administration (DEA) within the United States Department of Justice. Your Affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7) – that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. Your Affiant has been employed by the DEA since February 2004, is currently assigned to the DEA Indianapolis District Office, Indianapolis, Indiana, and has been so assigned since October 2008. Prior to assignment to the DEA Indianapolis District Office, your Affiant was assigned to the DEA Chicago Field Division in Chicago, Illinois.

2. In connection with my official DEA duties, I investigate criminal violations of state and federal controlled-substances laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846 and 848, as well as the laundering of drug trafficking proceeds in violation of Title 18, United States Code, Sections 1956 and 1957. I have personally conducted and/or assisted in numerous criminal investigations involving controlled substances and money laundering. I have received special training in the

enforcement of laws concerning controlled substances, I have testified in judicial proceedings and prosecutions for violations of controlled substance laws, and I have been actively involved in various types of electronic surveillance, including wire and electronic communication interception of more than fifty target telephones. I have participated in the debriefing and interviews of defendants, witnesses, informants (confidential sources), and others who have knowledge both of the distribution and transportation of controlled substances and also of the laundering and concealing of proceeds from drug trafficking. I have reviewed numerous investigative reports and interviews related to the possession, manufacture, and delivery of (including possession with intent to deliver) controlled substances. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances and their use of telephones and code language to conduct their transactions. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to, visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers, and undercover operations. I have had conversations with drug traffickers concerning their methods of operation in the course of investigative interviews and have participated in the execution of numerous search warrants relating to illegal drug trafficking. My experience and training enable me to recognize methods and means used for the distribution of controlled substances and for the organization and operation of drug conspiracies, including the means

employed to avoid detection.

3. I have personally participated in the investigation as set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA, IRS-CID, the Indianapolis Metropolitan Drug Task Force (MDTF), and other law enforcement organizations; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another Special Agent, Task Force Officer, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

4. This affidavit is being submitted in support of a criminal complaint charging Christopher Tate (XX-XX-1990), Jovan Stewart (XX-XX-1988), and Tia Dimmett (XX-XX-1992) with Possession with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

**Facts Supporting Probable Cause**

5. On February 21, 2020, investigators involved in an ongoing investigation into the distribution of controlled substances were performing surveillance on Christopher Tate, Jovan Stewart and Tia Dimmett. On

February 21, 2020, at approximately 2:12 p.m., Christopher Tate's black Ford Fusion arrived at 3517 Periwinkle Way, Indianapolis, Indiana.[1] At approximately 2:13 p.m., Metropolitan Drug Task Force (MDTF) Detective John Brown observed Tia Dimmett exit the black Ford Fusion and enter the Periwinkle Way residence. At approximately 2:15 p.m., Detective Brown observed a white 2011 Hyundai Sonata arrive at the Periwinkle residence. DEA Task Force Officer (TFO) Scott Childers and Detective Brown observed the driver of the Hyundai, an unknown black male, exit the vehicle and meet with Tate in front of the residence and observed both walk into the residence. At approximately 2:24 p.m., Detective Brown observed Tate and the unknown black male out by their vehicles talking. Detective Brown observed and video recorded the unknown black male as he was walking away from the residence and he appeared to have a bulge under his shirt as if he were carrying something and attempting to conceal it. After the unknown black male left the residence, Tate entered the Ford Fusion as the front passenger and Dimmett entered into the rear passenger compartment of the Ford Fusion. At approximately 2:24 p.m., the Ford Fusion departed 3517 Periwinkle Way, Indianapolis, Indiana. After turning around, the Ford Fusion returned to 3517 Periwinkle Way at approximately 2:26 p.m.

6. On February 21, 2020, at approximately 2:28 p.m., Detective Brown observed Tia Dimmett exit the 3517 Periwinkle Way residence carrying a white bag. Detective Brown observed Dimmett re-enter the Ford Fusion with the

---

[1] The Ford Fusion is registered to Christopher Felton Tate, 4496 Willow Bend Drive, Apt. A, Beech Grove, Indiana.

white bag. The Ford Fusion then departed the residence.

7. Based on the observations at 3517 Periwinkle Way, Indianapolis, Indiana, your affiant contacted IMPD Interdiction Officers for assistance in conducting a traffic stop of the Ford Fusion. On February 21, 2020, at approximately 2:46 p.m., IMPD Interdiction Officer Mike Bragg, at the direction of DEA, conducted a traffic stop on the Ford Fusion near 1300 North Emerson Avenue in Indianapolis, Indiana. Officers identified Jovan Stewart as the driver of the Ford Fusion, Christopher Tate as the front passenger and owner of the Ford Fusion, and Tia Dimmett as the rear passenger. IMPD Interdiction Officer Andy Patton and his K9 partner Tice conducted a narcotic detection examination of the Ford Fusion. According to Detective Patton, K9 Tice gave a positive alert for the presence of narcotics on the driver's side front area of the Ford Fusion. After the positive indication, investigators conducted a search of the vehicle. During a search of the vehicle, investigators recovered approximately five pounds of suspected methamphetamine wrapped in duct tape in a white pillow case under the front passenger seat in between the front passenger (Tate) and the rear passenger (Dimmett).[2] Investigators also recovered a loaded Taurus .40 caliber handgun under the driver's side seat and approximately $2,000 United States Currency on Tate's person.

8. After being advised of her Miranda Rights, Tia Dimmett provided a post-arrest statement to investigators. During the recorded statement, Dimmett told investigators her boyfriend Daryl Stennis had been shot and

---

[2] The substance field tested positive for the presence of methamphetamine.

killed in Indianapolis the previous day. Prior to Stennis being killed, he stored the duct taped packages containing the methamphetamine seized during the traffic stop mentioned above, at her residence located at 3531 N. Elizabeth Street, Indianapolis, Indiana. Dimmett told investigators after Stennis' murder, she asked "C," (Christopher Tate) one of Stennis' friends, to assist with getting rid of the packages. According to Dimmett, Tate and Stewart picked her up at 3531 N. Elizabeth Street prior to the traffic stop and took her to her grandmother's residence located at 3517 Periwinkle Way, Indianapolis, Indiana. Dimmitt told investigators that she carried the packages wrapped in duct tape out of the Elizabeth Street residence in a pillow case. Dimmitt stated Tate and Stewart took her and the pillow case containing the methamphetamine to her grandma's residence on Periwinkle Way. Dimmett stated after spending a short time at Periwinkle Way, she, Tate and Stewart departed the residence and were stopped by the police. Dimmett stated she did not know where Tate and Stewart were taking her when they left Periwinkle Way. Dimmett stated the items in the bag belonged to Stennis and she was not sure what was wrapped in the duct taped packages.

9. After being advised of his Miranda Rights, Christopher Tate agreed to provide a post arrest statement to investigators. The statement was video recorded. Tate admitted to investigators that he knew the controlled substances were in the Ford Fusion, however, he refused to tell investigators who put the controlled substances in the vehicle and would not identify the type of controlled substances. Tate told investigators he knew the drugs were

"hardcore drugs". Tate told investigators he was attempting to assist Demmett sell the controlled substances so she could make some money and get out of town. Tate told investigators the officers conducting the traffic stop found the controlled substances under the front passenger seat of the vehicle and he was sitting in the front passenger seat. Tate told investigators the vehicle was his but that he was not driving it because his driver's license had been suspended. Tate also added he did not know how the firearm got in the Ford Fusion.

10. During a post Miranda video recorded statement, Jovan Stewart told investigators he was friends with Christopher Tate and earlier in the day Tate asked him (Stewart) to drive him because Tate's license had been suspended. Stewart told investigators he did not see anyone put the firearm or any drugs into the Ford Fusion. Stewart also stated he remained in the Ford Fusion while at the Periwinkle residence, however, he never saw Tate meet with anyone at the residence and he never saw anyone put a pillow case into the vehicle.

11. Based upon the above paragraphs, I believe from my training and experience that probable cause exists to charge Christopher Tate, Jovan Stewart, and Tia Dimmett with Possession with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Sections

12. 841(a)(1) and 841(b)(1)(A)(viii).

_____
Matthew W. Holbrook, Special Agent
Drug Enforcement Administration


Sworn to before me this 24th day of February, 2020.

_____
Tim A. Baker, Magistrate Judge
United States District Court
Southern District of Indiana